MARCIAL RÍOS DE JESÚS, Plaintiff and Appellee, v. CLAUDIA LAFOSSE, Defendant and Appellant.

No. 8226. Argued November 7, 1941.—Decided November 25, 1941.

*Dubón & Ochoteco* for appellant. *Luis Vergne Ortiz* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

On November 25, 1936, the District Court of San Juan decreed the dissolution of the marriage relation existing between the plaintiff and the defendant, and awarded to the latter the custody of the minor María Ésther Ríos Lafosse, a daughter of both parties.

On the 26th of August, 1939, the father of said minor filed, in the District Court of Bayamón a petition for a writ of *habeas corpus* and prayed for the issuance of an order placing such minor under his custody and *patria potestas*. The grounds for the petition are as follows:

That notwithstanding the award of the child's custody to the defendant, the latter failed to take steps to have the child delivered to her and left said child with the plaintiff father until August 13, 1939, when the defendant, accompanied by a policeman, called at the plaintiff's house and compelled him to deliver the child to her; that since the child was born she has lived under the care of her father, her grandmother, and several paternal aunts who lived with him; that the defendant has never felt towards the child a true motherly affection, inasmuch as no sooner had she been divorced she left for the United States without saying goodby to her daughter and without taking any interest in her during the time she lived abroad; that the defendant lacks the necessary moral qualifications for bringing up her daughter properly; that the defendant is detaining and has deprived the child of her liberty and prevents the plaintiff from having access to her; that the defendant's financial circum-

stances do not allow her to look after the minor properly; that the child scarcely eats, is losing weight, feels no love for her mother, and feels herself as if imprisoned; and, lastly that the physical, mental, and moral welfare of the child requires that she be returned to the custody of her father.

In her answer the defendant alleged:

That upon the divorce being decreed, as neither he nor she had the means for supporting the child, they agreed to leave the latter in the care of her grandmother until the financial situation of the plaintiff should improve; that as the defendant was now in a position to support her daughter and as she had the *patria potestas* over the child by virtue of the divorce decree, she has got her back and keeps her in her domicile; that she has taken charge of her daughter because the latter was utterly neglected; that it is her intention to take the minor to New York, where she may be educated and have the benefit of her mother's love; that the plaintiff is a person of bad habits and his behavior is a bad example to her daughter.

After hearing the evidence of both parties, the lower court made an order granting the petition and awarding the custody of the minor to her father, without prejudice to the right of the mother to visit her. Feeling aggrieved by that decision, the defendant appealed therefrom. She urges that the lower court erred: (*a*) in having considered as the controlling factor in awarding the custody of the minor, the inclination and attachment of the child to her father and his relatives; (*b*) in denying to the mother the custody of her daughter because the former intended to move to New York and work there; (*c*) in holding that it did not deem it advisable to change the status of the child because of the uncertainty as to the child's fate, owing to the fact that the minor has been living in her mother's house for only one month; and (*d*) in holding that the welfare and happiness of the minor demand that the latter should remain in her

father's custody. We will consider the four assignments together.

■■ After disregarding the mutual charges of immoral conduct made by the parties against each other, as the same were deemed to have been dictated by passion, the trial court proceeded to consider the evidence and to make the following findings:

"Now, the minor in question was voluntarily left by the defendant mother in the custody of the father, petitioner herein, while the latter was living in Cataño with his mother Dolores de Jesús and with his sisters Carmen-Belén and Dolores Ríos, when the child was between seven and eighteen months old, and ever since that time until August 13, 1939, when she was eight years and some months old, the child remained always under the custody and care of the father, and in his company and that of her grandmother and paternal aunts. The child lived about seven years deprived of the warmth, love, and care of the mother because the latter so willed. That is why when the child reached the age of reason and began to think for herself she knew as her mother her grandmother Dolores de Jesús and as her sisters, her aunts Carmen-Belén and Dolores Ríos. During all that time the mother stayed away from her daughter, she saw her very rarely, and her contact with her was of short duration. After she was awarded the *patria potestas* and the custody of the child by virtue of the divorce decree, she sailed for the United States without worrying about the custody and care of the child, and on her return eight months afterwards she did not show any concern, either. Now, that is, on August 13, 1939, the defendant mother took the child with her, intending to remove with her to the city of New York, in order to board there with her aunt Sabina Viera and to work on a position. This plan of the defendant mother seems to us to be an adventure that should not be undertaken, for the sake of the child's education and welfare. Under the control and direction of the father and the care and attention of the grandmother and paternal aunts this child has remained during her short life in a comparatively good situation, enjoying the love of all of them, and the father has furnished everything necessary for her support, in a modest way, in accordance with his means and resources as a workman by trade; she has been zealously taken care of and has felt herself so happy that she refuses to leave them and stay with

her mother. It does not seem judicious and still less advisable that such status of the child should be altered in order either to keep her where she is at present by her mother's side in the village of Amelia, Guaynabo, which is unknown to us, as at the time of the hearing of this case she had been living there only a month, or to take her to New York and place her there, as must happen, under the care of an unknown person while the mother works away from the child in order to earn money for her own support and that of the child; especially since we have no doubt that the efforts of the petitioner father to get the custody and care of the child are due to and inspired by his desire to look after the welfare and happiness of the child.

"In view of the special circumstances of the case, we do not feel bound to issue any coercive order whereby the mere legal right of the mother to her *patria potestas* may be enforced as against the child's manifest inclination and reasonable choice to return where she was. The defendant mother voluntarily reliquinshed the care of her child when the latter was a baby and left her in the charge and control of her father and of her grandmother; and the natural and inevitable consequences being that this child, who knows no other parents or protectors, and who occasionally and not for long has been in her mother's company, during seven years has become attached to her father, her grandmother, and her aunts, as they had to her and has come to look upon her mother as a stranger whom she calls Claudia and not 'mama,' refusing to stay with her. We think that, although she has not reached the age of legal discretion, she is sufficiently intelligent to be allowed, to a certain extent, to make her own choice in the matter of her residence which so deeply affects her feelings and her interests; and having heard her during the trial and weighed her feelings and inclinations, we are convinced that it would simply be an act of extreme cruelty to deprive her of the only home she has ever known, even though it were for the purpose of keeping her under the care of her own mother. We also think that the material interests of this child will be better served and secured by leaving her where she was before and where she wishes to remain, as we have no doubt that she would moreover certainly receive the care and custody of her father and the protection of her paternal relatives which she always enjoyed until the defendant mother took her away from the petitioner, her father. See *In re Gates*, 95 Cal. 461.

"When considering the matter of the welfare and happiness of this child we have specially taken into account the respective conduct

of her father and her mother towards her as an important element in the determination of her custody, and from the evidence as a whole, it seems to us that the surroundings most favorable for the moral and physical welfare and happiness of the child are to be found where she was before the defendant mother took her away with her, which circumstances have been especially relied upon by us for our determination regarding her custody, inasmuch as the *patria potestas* and the right of the mother to the custody of her child by virtue of the divorce decree are subject to the sound discretion of the court in exercising its powers as *parens patriae.* *Chabert* v. *Sánchez,* 29 P.R.R. 225; *Babá* v. *Rodríguez,* 36 P.R.R. 453; *Blanco* v. *Hernández,* 32 P.R.R. 20, and *Ex parte Maldonado,* 42 P.R.R. 832.''

We deem it unnecessary to sum up the evidence here. We have carefully examined it and we think it is sufficient to justify the conclusions reached by the trial court.

The case *In re Gates,* 95 Cal. 461, cited by the lower court, presents a situation very similar to the one involved herein. There the mother of a child 10 years old alleged that said child was unlawfully in the custody of one Mr. Eldridge, who opposed her petition for *habeas corpus* on the ground that he had the right to the custody of the child by virtue of a judicial order appointing him the minor's guardian. The Supreme Court of California denied the petition, saying:

''From the facts disclosed by the petition, the return, and the evidence adduced at the hearing, I am satisfied that the order appointing Mr. Eldridge guardian of the child is void for want of jurisdiction, and that the petitioner is the person legally entitled to her custody. But in-view of the special circumstances of the case, I do not feel called upon to make any coercive order by which the mere legal right of the petitioner may be enforced against the child's manifest inclination and reasonable choice to remain where she is. The petitioner voluntarily relinquished the care of her child when she was scarcely a year old, and ever since she was two years of age has left her in the exclusive charge and control of Mr. and Mrs. Eldridge, the latter being a sister of the child's father. The natural and inevitable consequence has been that this little girl,

knowing no other parents or protectors, and never seeing her mother but twice in nearly nine years, has become deeply attached to her aunt and uncle, as they have to her, and has come to look upon her mother as a stranger. Though she has not reached the years of legal discretion, she is sufficiently intelligent to be trusted in some degree to choose in a matter affecting so deeply her feelings and her interests; and having examined her privately, I am convinced that it would be nothing less than an act of extreme cruelty to tear her from the only home she has ever known, even for the purpose of placing her under the care of her own mother. Her material interests also will be promoted by leaving her where she is, and where she chooses to remain.''

In the case at bar it was shown that the defendant abandoned her husband's home about four years prior to the divorce; that on the day she left the home the defendant called on the paternal grandmother of the child and told her to go and take charge of the little girl, who at the time was seven months old; that the grandmother took the child and the child became ill as the latter had no mother to breast her and it became necessary to feed her with cow's milk; that although the mother was told that the little girl had been very sick because of the change in the milk she did not even go in to see her; that ever since she had turned the child over to the grandmother, the defendant went to see the child occasionally but ceased to look after her.

In the case *In re Gates, supra,* the controversy over the custody of the child was between her mother, who had deserted her when she was less than one year old, and her aunt and uncle who gave her a home and their love and were in better circumstances than the mother to enable them to continue supporting and educating her. The main reason which led the court to leave the child in the custody of her uncle and guardian was that the welfare of the child was thus better insured.

In *Chabert* v. *Sánchez,* 29 P.R.R. 225, the custody of a minor child six years of age was claimed by the father. The child was in the custody of very worthy persons who duly

looked after her welfare, without such persons being related to the child by either blood or affinity. The district court denied the *habeas corpus* petition. This court reversed the judgment and remanded the case for further proceedings, laying down the doctrine that "Although parents are generally entitled to the custody of their minor children, that right is not absolute and a petition for a writ of *habeas corpus* to obtain the custody of the minor child, which is by its nature an equitable remedy, is directed to the sound discretion of the court within which the principal factor to be considered is the welfare of the minor."

In *Blanco* v. *Hernández,* 32 P.R.R. 20, the custody of a child was claimed by the mother to whom it had been awarded by a divorce decree. The father seized the minor and the mother filed a petition for *habeas corpus.* It was held that the production of the divorce decree was sufficient to establish a prima facie case for the petitioning mother and that it was incumbent upon the father to show that circumstances had changed after such decree had been rendered. The judgment in favor of the mother was affirmed because of the failure of the father to prove that the welfare of the child was better insured if the minor was placed under his custody.

In *Babá* v. *Rodríguez,* 36 P.R.R. 453, the father applied on *habeas corpus* for the custody of his legitimate daughter, 16 years old, who had left the father's home in order to take refuge in that of her grandmother. The lower court, taking into consideration the corrupt and improper conduct of the father towards his daughter, held that the welfare of the girl required that she be left with her grandmother. In affirming the judgment whereby the father was refused the custody of the girl, this court speaking through Mr. Justice Wolf said:

"The appellant petitioned for this writ himself. While the writer, in *Ex parte Chabert,* 30 P.R.R. 712, expressed some doubts,

this is the kind of a case calculated to dissipate doubts and he has arrived at the conclusion that in Porto Rico the well-being of a child may be inquired into in *habeas corpus* proceedings presented by a father. There is nothing in any code in Porto Rico that prevents such a determination. A court is a *parens patriae* and can look out for the interests of a child and protect it. It would work a hardship to cause this girl to be returned even temporarily.''

In *Ex parte Maldonado,* 42 P.R.R. 832, the father was awarded by the divorce decree the custody of the children. By an agreement between the parties the children were left in the mother's custody. Six years passed without the father showing any interest whatever in the welfare of the minors. The district court denied the *habeas corpus* petition filed by the father and this court affirmed the judgment, saying:

''The district judge did not err in holding that the *patria potestas* and the right of the father under the decree of divorce were alike subordinate to the sound discretion of the court in the exercise of its power as *parens patriae.* (Citations.) There was no abuse of discretion in the instant case.''

In our opinion the lower court exercised properly its discretion in granting to the father the custody of the minor. After a consideration of the facts and circumstances of the case, we entertain no doubts that the girl will be better looked after by her father, her grandmother, and her paternal aunts, who, ever since she was seven months old until she was seized by the mother, had sheltered, supported, and loved her. The mother, on the other hand, during those eight years, failed to care for her daughter and contributed with her indifference to her being looked upon by the girl as a stranger, to the extent that the latter preferred to· continue to live in her father's home. The father has shown during those eight years that he is able to support and properly educate his daughter. In place of such security, the mother promises her an adventure, a trip to New York, where she expects to find work to enable her to support herself and her daughter.

We find no justification for interfering with the discretion of the lower court. The order appealed from must be affirmed.